<u>NOT FOR PUBLICATION</u>

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| LORENZO OLIVER, : | |
| : | **Hon. Faith S. Hochberg** |
| Plaintiff, : | |
| : | Civil Action No. 07-1968 (FSH) |
| v. : | |
| : | |
| JOHN D'AMICO, et al., : | <u>OPINION</u> |
| : | |
| Defendants. : | |
| : | |

**APPEARANCES:**

    LORENZO OLIVER, #221344, Plaintiff <u>Pro</u> <u>Se</u>
    East Jersey State Prison
    Lock Bag R
    Rahway, New Jersey  07065

<u>HOCHBERG</u>, District Judge

    Plaintiff Lorenzo Oliver seeks to file a Complaint asserting violation of his constitutional rights, pursuant to 42 U.S.C. § 1983.  Having thoroughly reviewed Plaintiff's allegations and his application to proceed <u>in</u> <u>forma</u> <u>pauperis</u>, the Court will grant <u>in</u> <u>forma</u> <u>pauperis</u> status, dismiss the federal claims asserted in the Complaint, and decline to exercise supplemental jurisdiction. <u>See</u> 28 U.S.C. §§ 1915(e)(2)(B), 1915A(b).

**I.  BACKGROUND**

    Plaintiff sues John D'Amico, Chairman of the New Jersey State Parole Board ("the Parole Board"); Grace Rogers, Administrator of the Adult Diagnostic and Treatment Center; Armando B. Fontoura, Essex County Sheriff; and Sonya Noyes, Criminal Division Manager in Essex County, based on the following facts, which this Court is required to regard as true for the

purposes of this review. Plaintiff asserts that on February 7, 1995, he was re-convicted of two counts of sexual assault, one count of attempted sexual assault, and two counts of aggravated criminal restraint. He alleges that on March 8, 1995, Dr. Frank performed a court-ordered psychological examination at the Adult Diagnostic and Treatment Center, stating that Plaintiff's conduct was characterized by a pattern of repetitive compulsive behavior and that he would benefit from treatment at the Adult Diagnostic and Treatment Center. Plaintiff asserts that on May 15, 1995, he received a copy of the presentence report prepared by the Essex County Case Management Office, with a copy of the psychological examination attached. Plaintiff asserts that the presentence report incorrectly stated that he was arrested as a juvenile for malicious damage, trespassing, running away, assault and battery and rape. Plaintiff further alleges that the presentence report included several false and inaccurate statements regarding adult convictions. For example, he asserts that the presentence report inaccurately states that he was convicted of sexual assault and sodomy, when he was in fact convicted of assault with the intent to carnal abuse.

  Plaintiff asserts that on October 28, 2002, he received his first parole eligibility hearing. Plaintiff states that he informed the parole panel that he had not been arrested or convicted of several crimes described in the presentence report, but the panel used the incorrect information and denied parole on the basis of his criminal history and extensive juvenile record. Plaintiff states that he was thereafter denied parole on three other occasions "because the Parole Board added false, misleading and/or information where the petitioner had never been given notice of its existence in order to dispute it." (Compl. ¶ 16.)

Plaintiff asserts that on September 20, 2004, he appealed the denial of parole to the Superior Court of New Jersey, Appellate Division. He alleges that the papers filed by the Board "revealed for the first time confidential information the Parole Board relied on in denying petitioner parole . . . . The Board stated that in 1996 Petitioner took a risk assessment on the Mn-SOST-R test and scored a 11, placing him in the high risk to reoffend and possible civil commitment range. This is the May 5, 1995 psychological evaluation petitioner took for resentencing at the Adult Diagnostic and Treatment Center." (Compl. ¶ 18.)

Plaintiff asserts that he again attempted to have the information in his parole records corrected. He alleges that on January 23, 2006, he wrote a letter to Essex County Sheriff Fontoura informing him of the incorrect information in the presentence report. On February 12, 2006, he wrote to Grace Rogers to inform her that the Adult Diagnostic and Treatment Center sent a risk assessment to the Parole Board which was not provided to him at the time of sentencing.

Plaintiff further asserts that the Parole Board scheduled a psychological evaluation with Dr. Bouba. Plaintiff states that on March 6, 2006, he wrote a letter to John D'Amico, Parole Board Chairman, and to the Public Defender's Unit for Civil Commitment requesting the appointment of counsel, pursuant to the Sexually Violent Predator Act. He asserts that he received no response from the Parole Board, but that Mr. Friedman of the Public Defender's Office responded that the office could not represent him unless he was being civilly committed. Plaintiff asserts that Dr. Bouba performed the psychological evaluation on March 17, 2006, and that on April 5, 2006, Dr. Macowski informed Plaintiff that he would be recommending to the County Prosecutor that Plaintiff be evaluated for civil commitment as a sexually violent predator.

3

Plaintiff asserts that Defendants deprived him of (1) his Due Process rights by initially withholding the risk assessment completed by Dr. Frank, by including false information in his presentence report regarding his criminal history, and by failing to correct the inaccurate information; and (2) his Sixth Amendment right to counsel after he requested counsel during an investigation for future civil commitment. Plaintiff seeks declaratory relief, injunctive relief and damages.

## II.  LEGAL STANDARD FOR SUA SPONTE DISMISSAL

The Prison Litigation Reform Act ("PLRA"), Pub. L. No. 104-134, §§ 801-810, 110 Stat. 1321-66 to 1321-77 (April 26, 1996), requires the Court, prior to docketing or as soon as practicable after docketing, to review a complaint in a civil action in which a plaintiff is proceeding in forma pauperis or a prisoner seeks redress against a governmental employee or entity. See 28 U.S.C. §§ 1915(e)(2)(B), 1915A. The PLRA requires the Court to sua sponte dismiss any claim if the Court determines that it is frivolous, malicious, fails to state a claim on which relief may be granted, or seeks monetary relief from a defendant who is immune from such relief. Id.

"A document filed pro se is to be liberally construed, and a pro se complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers." Erickson v. Pardus, __ U.S. __, __, 127 S. Ct. 2197, 2200 (2007) (citations and internal quotation marks omitted); see also Haines v. Kerner, 404 U.S. 519, 520 (1972). "Federal Rule of Civil Procedure 8(a)(2) requires only 'a short and plain statement of the claim showing that the pleader is entitled to relief.' Specific facts are not necessary; the statement need only give the

4

defendant fair notice of what the . . . claim is and the grounds upon which it rests." Erickson, 127 S. Ct. at 2200 (citations and internal quotation marks omitted).

A claim is frivolous if it "lacks even an arguable basis in law" or its factual allegations describe "fantastic or delusional scenarios." Neitzke v. Williams, 490 U.S. 319, 328 (1989); see also Roman v. Jeffes, 904 F.2d 192, 194 (3d Cir. 1990). "Given the Federal Rules' simplified standard for pleading, '[a] court may dismiss a complaint only if it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations." Swierkiewicz v. Sorema N.A., 534 U.S. 506, 514 (2002) (quoting Hishon v. King & Spalding, 467 U.S. 69, 73 (1984)); see also Thomas v. Independence Tp., 463 F.3d 285, 296-97 (3d Cir. 2006); Alston v. Parker, 363 F.3d 229, 233 n.6 (3d Cir. 2004). However, a court should not dismiss a complaint with prejudice for failure to state a claim without providing leave to amend, unless it finds bad faith, undue delay, prejudice or futility. See Grayson v. Mayview State Hosp., 293 F. 3d 103, 110-111 (3d Cir. 2002); Shane v. Fauver, 213 F. 3d 113, 117 (3d Cir. 2000).

### III.  DISCUSSION

Federal courts are courts of limited jurisdiction. See Mansfield, C. & L. M. Ry. Co. v. Swan, 111 U.S. 379, 383 (1884). "[T]hey have only the power that is authorized by Article III of the Constitution and the statutes enacted by Congress pursuant thereto." Bender v. Williamsport Area School Dist., 475 U.S. 534, 541 (1986). A district court may exercise jurisdiction over "Cases, in Law and Equity, arising under this Constitution, the Laws of the United States, and Treaties made, or which shall be made, under their authority." U.S. Const. art. III., § 2; see also 28 U.S.C. § 1331.

Section 1983 of Title 42 of the United States Code authorizes a person such as Plaintiff to seek redress for a violation of his federal constitutional rights by a person who was acting under color of state law.  Section 1983 provides in relevant part:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory . . . subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress.

42 U.S.C. § 1983.

To recover under 42 U.S.C. § 1983, a plaintiff must show two elements:  (1) a person deprived him or caused him to be deprived of a right secured by the Constitution or laws of the United States, and (2) the deprivation was done under color of state law.  See West v. Atkins, 487 U.S. 42, 48 (1988); Adickes v. S.H. Kress & Co., 398 U.S. 144, 152 (1970).  This Court construes the Complaint as asserting the following claims:  (A) Defendants violated Plaintiff's Fourteenth Amendment right to Due Process of law by failing to disclose the risk assessment done in 1995 until 2004 when he appealed the denial of parole, by including false and inaccurate information about his criminal history in the presentence report which was used by the Parole Board, and by failing to correct the inaccurate information;  and (B) Defendants violated his Sixth Amendment right, applicable through the Fourteenth Amendment, to counsel by failing to provide counsel during the investigatory stage of the sexually violent predator commitment process.

A.  Due Process

The Due Process Clause of the Fourteenth Amendment of the Constitution of the United States provides: "nor shall any State deprive any person of life, liberty, or property, without due process of law." U.S. Const. amend. IV.  The Due Process Clause applies when government action deprives a person of liberty or property.  See Greenholtz v. Inmates of Nebraska Penal and Correctional Complex, 442 U.S. 1, 7 (1979).  In determining a procedural due process claim, the first step is to consider whether the nature of the liberty or property interest is protected under the Fourteenth Amendment.  See Fuentes v. Shevin, 407 U.S. 67 (1972).  If so, the second step is to determine what process is due to protect the interest.  See Morrissey v. Brewer, 408 U.S. 471 (1972).  Liberty interests protected by the Due Process Clause may arise from the Due Process Clause itself or from the laws of the states.  See Sandin v. Conner, 515 U.S. 472, 483-84 (1995); Hewitt v. Helms, 459 U.S. 460, 466-67 & n.4 (1983).  "Decisions of the Executive Branch, however serious their impact, do not automatically invoke due process protection."  Greenholtz, 442 U.S. at 7.

A defendant has a due process right not to be sentenced on the basis of information that is materially false, and that right is protected by affording the defendant notice of and an opportunity to respond to information in a presentence report.  See United States v. Tucker, 404 U.S. 443 (1972); Townsend v. Burke, 334 U.S. 736, 741 (1948); Moore v. United States, 571 F. 2d 179 (3d Cir. 1978); Jackson v. Myers, 374 F. 2d 707 (3d Cir. 1967).  In Townsend, the Supreme Court held that a habeas petitioner's sentence did not satisfy due process because petitioner was "sentenced on the basis of assumptions concerning his criminal record that were materially untrue."  Townsend, 334 U.S. at 741.  In Tucker, the Court granted habeas relief

7

because the sentencing court relied on two prior felony convictions which were constitutionally invalid. Tucker, 404 U.S. at 448. However, subject to this protection, a judge's discretion in sentencing is "largely unlimited either as to the kind of information he may consider, or the source from which it may come." United States v. Tucker, 404 U.S. at 446; see also United States v. Booker, 543 U.S. 220, 233 (2005) ("We have never doubted the authority of a judge to exercise broad discretion in imposing a sentence within a statutory range . . . . For when a trial judge exercises his discretion to select a specific sentence within a defined range, the defendant has no right to a jury determination of the facts that the judge deems relevant"); Williams v. New York, 337 U.S. 241, 250-51 (1949) (sentencing courts' "age-old practice of seeking information from out-of-court sources to guide their judgment toward a more enlightened and just sentence" does not violate due process).

Plaintiff in this case does not contend that he was sentenced on the basis of inaccurate information which he had no opportunity to contest. Rather, he asserts that the presence of inaccurate criminal history information and an undisclosed risk assessment in his presentence report violates Due Process because the Parole Board used this information in considering his parole eligibility.[1] However, an inmate like Plaintiff has no liberty interest arising by force of the Due Process Clause itself in being released on parole prior to the expiration of his sentence. Greenholtz, 442 U.S. at 7. Moreover, "the mere presence of . . . inaccurate information in a PSR does not constitute a denial of due process." Hili v. Sciarrotta, 140 F. 3d 210, 216 (2nd Cir. 1998).

---

[1] Plaintiff asserts that he wrote one or more letters to the Parole Board correcting the inaccurate criminal history. Plaintiff further asserts that the risk assessment was disclosed to him in 2004.

A State may also create a protected liberty interest by statute or regulation.  See Sandin, 515 U.S. at 483-84.  In Sandin v. Conner, the United States Supreme Court explained that mandatory language in a state law or regulation can create a protected liberty interest only if the alleged deprivation "imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." Sandin, 515 U.S. 484.  Under Sandin, Plaintiff was entitled to Due Process only if Defendants imposed an "atypical and significant hardship" in relation to the ordinary incidents of prison life.  Sandin, 515 U.S. at 484.  "Moreover, the baseline for determining what is 'atypical and significant' - the 'ordinary incidents of prison life' is ascertained by what a sentenced inmate may reasonably expect to encounter as a result of his or her conviction in accordance with due process of law."  Griffin v. Vaughn, 112 F.3d 703, 706 (3d Cir. 1997).

Plaintiff complains that the procedures for considering his parole eligibility violate Due Process, see Wilkinson v. Dotson, 544 U.S. 74 (2005), because the presentence report includes false and inaccurate information regarding his criminal history, officials failed to disclose a risk assessment prior to his initial parole eligibility date, and officials failed to correct the information in the presentence report after he informed them of the errors.  To the extent that he contends that he has an independent state created liberty interest in avoiding inaccurate information in his pre-sentence report or the immediate disclosure of a risk assessment, the claim fails because one can have no liberty interest in procedural requirements or process.  See Williams v. Fed. Bureau of Prisons, 85 Fed. Appx. 299, 304 (3d Cir. 2004) (holding that, absent a protected liberty interest, the Due Process Clause does not afford a prisoner any right to have inaccurate information in his presentence report expunged from his prison file); Hili v. Sciarrotta, 140 F. 3d 210, 216 (2nd Cir.

9

1998) (rejecting inmate's request for an injunction to correct inaccurate information in a presentence report which the inmate alleged was being used to deny him parole); Hampton v. Mouser, 701 F. 2d 766 (8th Cir. 1983) (claim that presence of false statements in presentence report adversely affected parole failed to state constitutional violation); Fox v. New Jersey State Parole Bd., 2007 WL 1100823 (D.N.J. April 9, 2007) (denying habeas relief on claim that the Parole Board denied due process by using inaccurate information in denying parole).[2]

To be sure, state and federal courts have held that a New Jersey inmate has a state created liberty interest in the expectancy of release on parole at the time of parole eligibility, absent the requisite finding that one of the justifications for deferral exists.[3] See Greenholtz, 442 U.S. at 7-12; Watson v. DiSabato, 933 F. Supp. 390 (D.N.J. 1996); McCray v. Dietz, 517 F. Supp. 787, 790 (D.N.J. 1980); New Jersey State Parole Bd. v. Byrne, 93 N.J. 192, 206-08 (1983); Gerardo v.

---

[2] See also Hewitt v. Helms, 459 U.S. 460, 469 (1983) ("we have never held that statutes and regulations governing daily operation of a prison system conferred any liberty interest in and of themselves"); Olim v. Wakinekona, 461 U.S. 238, 250-251 (1983) ("Process is not an end in itself. Its constitutional purpose is to protect a substantive interest to which the individual has a legitimate claim of entitlement. . . . The State may choose to require procedures for reasons other than protection against deprivation of substantive rights, of course, but in making that choice the State does not create an independent substantive right"); Owensboro Waterworks Co. v. City of Owensboro, 200 U.S. 38, 47 (1906) ("Many acts done by an agency of a state may be illegal in their character when tested by the laws of the state, and may, on that ground, be assailed, and yet they cannot, for that reason alone, be impeached as being inconsistent with the due process of law enjoined upon the states."); Elkin v. Fauver, 969 F.2d 48, 52 (3d Cir. 1992), cert. denied, 506 U.S. 977 (1992) ("An alleged violation of state law, however, does not state a claim under section 1983.").

[3] At the time of Plaintiff's offense, New Jersey law provided that "[a]n adult inmate shall be released on parole at the time of parole eligibility, unless information supplied in the report filed . . . or developed or produced at a hearing . . . indicates by a preponderance of the evidence that there is a substantial likelihood that the inmate will commit a crime under the laws of this State if released on parole at this time." N.J. Stat. Ann. § 30:4-123.53 (1992), amended by N.J. Stat. Ann. § 30:4-123.53(a), L. 1997, c. 217; Assembly and Public Safety Committee Statement Regarding Assembly No. 23.

New Jersey State Parole Bd., 221 N.J. Super. 442, 446 (App. Div. 1987).  Assuming without deciding that Plaintiff has a state created liberty interest in the expectancy of parole release at the time of eligibility, absent the requisite finding, this Court holds that Plaintiff received all the process he was due.  In Greenholtz, the Supreme Court recognized that Nebraska had created a liberty interest in the expectancy of parole release, but the Court held that Nebraska had provided due process by requiring (1) notice of the parole eligibility hearing, (2) an opportunity for the inmate to appear at the eligibility hearing and present statements and letters on his own behalf, and (3) a statement informing him why parole was denied.  Greenholtz, 442 U.S. at 14-16.  Because due process does not require the presentence report to include completely accurate information, does not require the immediate disclosure of a risk assessment, and does not require officials to correct alleged inaccuracies in the presentence report, Plaintiff's Due Process claims necessarily fail.  Based on the foregoing, this Court will dismiss the Due Process claims for failure to state a claim upon which relief may be granted.

B.  Right to Counsel

Plaintiff asserts that Defendants violated his Sixth Amendment right to the assistance of counsel by failing to appoint an attorney to represent him during the investigatory stage of the sexually violent predator commitment process.  The Sixth Amendment provides that "[i]n all criminal prosecutions, the accused shall enjoy the right . . . to have the Assistance of Counsel for his defence." U.S. Const. amend. VI.   Plaintiff has no right to counsel during a pre-civil commitment investigation arising from the Sixth Amendment, however, because the Sixth Amendment applies only to criminal proceedings.  See   Hydrick v. Hunter, 466 F. 3d 676, 701 (9th Cir. 2006) ("While the Sixth Amendment, by its express language, protects those in *criminal*

11

proceedings, the Fourteenth Amendment protects all [civilly committed] detainees"). Nevertheless, "commitment to a mental hospital produces a massive curtailment of liberty, and in consequence requires due process protection." Vitek v. Jones, 445 U.S. 480 (1980) (citations and internal quotation marks omitted). Although "the constitutional rights to which a defendant in a criminal trial is entitled to do not adhere to a respondent in a commitment hearing . . . [i]t is clear that at a civil commitment hearing a [person] is constitutionally entitled to counsel." United States v. Budell, 187 F. 3d 1137, 1141 (9th Cir. 1999); accord Project Release v. Prevost, 722 F. 2d 960, 976 (2nd Cir. 1983) ("A right to counsel in civil commitment proceedings may be gleaned from the Supreme Court's recognition that commitment involves a substantial curtailment of liberty and thus requires due process protection"). On the other hand, in Vitek v. Jones, 445 U.S. 480, the Supreme Court did not require the appointment of counsel when a prisoner is involuntarily transferred to a state mental hospital. See also Gagnon v. Scarpelli, 411 U.S. 778 (1973) (Court declined to hold that indigent probationers have a right to counsel at revocation hearings and left decision as to appointment on a case-by-case basis).

The Sexually Violent Predator Act ("SVPA"), N.J. Stat. Ann. § 30:4-27.24 et seq., enacted in 1998 and effective August 12, 1999, permits the involuntary civil commitment of a "sexually violent predator" for control, care and treatment. See In re Commitments of M.G. and D.C., 331 N.J. Super. 365, 372 (App. Div. 2000). In Greenfield v. New Jersey Dep't of Corrections, 382 N.J. Super. 254 (App. Div. 2006), the Appellate Division of the Superior Court of New Jersey outlined the structure of the SVPA:

> That Act provides for the involuntary civil commitment of a person determined to be a sexually violent predator. The Act defines a sexually violent predator as "a person who has been

convicted, adjudicated delinquent or found not guilty by reason of insanity for commission of a sexually violent offense, or has been charged with a sexually violent offense but found to be incompetent to stand trial, and suffers from mental abnormality or personality disorder that makes the person likely to engage in acts of sexual violence if not confined in a secure facility for control care and treatment." N.J.S.A. 30:4-27.26(b).

An agency releasing a person who is serving a sentence or term of confinement is required to provide notice to the Attorney General at least 90 days before release if it determines that the person to be released may meet the criteria of a sexually violent predator. *N.J.S.A*. 30:4-27.27(a). The Attorney General may then seek a civil commitment. *N.J.S.A*. 30:4-27.28. Pursuant to *N.J.S.A*. 30:4-82.4, [the Department of Corrections] has adopted policies to identify those individuals who may meet the criteria for referral to the Attorney General and to provide information concerning those individuals upon which the Attorney General may make appropriate decisions. Those policies require the identification of prisoners who will be released within a given period and provide for appropriate testing and record reviews to be conducted so that timely notice may be given. The results of the tests and evaluations are then reviewed and a final decision made as to whether the individual may meet the criteria for civil commitment . . . .

A decision by the Attorney General to seek a commitment, is initiated by submitting "to the court a clinical certificate" accompanied by a certification of two doctors, one of whom must be a psychiatrist examining the subject of the application no more than three days before the petition for commitment. *N.J.S.A*. 30:4-27.28; *N.J.S.A*. 30:4-27.26. Upon receipt of these documents, the court makes a determination as to whether there is probable cause to believe the subject is a sexually violent predator. *N.J.S.A.* 30:4-27.28(f). The statute then provides for a possible temporary commitment, *N.J.S.A*. 30:4-27.28(g), a final hearing within twenty days of the temporary commitment, *N.J.S.A*. 30:4-27.29(a), and the right to review the documents resulting in the temporary commitment, *N.J.S.A*. 30:4-27.30(a). The Act further provides the individual whose commitment is the subject of the hearing must be represented by counsel. *N.J.S.A*. 30:4-27.29(c).

Greenfield, 382 N.J. Super. at 259-260.

The decision of the Superior Court of New Jersey in <u>Greenfield</u>, 382 N.J. Super. 254, is instructive. In that case, a New Jersey prisoner alleged that Due Process required a right to review the report prepared at the termination of his sentence for use by the Department of Corrections in deciding whether to refer him to the Attorney General for civil commitment as a SVP, as well as a right to be heard when the appropriate institutional committee first evaluated him for possible referral. The Superior Court, Appellate Division, held that a prisoner "is not entitled to be heard at the earlier stage when the [Committee] considers his possible referral to the Attorney General [because t]he plaintiff has almost no interest at this stage of the proceeding. Certainly, he is entitled to be heard when his liberty is threatened, but that threat will occur only after the Attorney General applies for a civil commitment and, as we have noted, plaintiff is then entitled to representation and access to the documents supporting the application." <u>Id.</u> at 261. The Appellate Division reasoned as follows:

> In matters such as the one presented here, the screening committee serves very much the same function as the prosecutor who considers the possibility of a charge; the Attorney General serves as the analog of the grand jury. If a potential criminal defendant has no right of access to a grand jury or a prosecutor to attempt to avoid criminal prosecution, there is no reason to think a person subject to possible civil commitment under the [SVPA] has the right to be heard by the screening committee. Plaintiff has no more interest in the proceedings that determine whether the institution will refer the matter than he does in being present when the police determine to investigate a crime in which he may have been involved.

<u>Greenfield</u>, 382 N.J. Super. at 262.

As explained in <u>Greenfield</u>, 382 N.J. Super. at 261, New Jersey law specifically requires the appointment of counsel in any judicial proceeding concerning the commitment of a SVP. <u>See</u>

N.J. Stat. Ann. § 30:4-27.29(c) ("A person subject to involuntary commitment shall have counsel present at the hearing and shall not be permitted to appear at the hearing without counsel").  This Court finds that New Jersey law sufficiently protects Plaintiff's Due Process right to counsel, and that officials did not violate Due Process by failing to appoint counsel during the investigatory stage prior to the initiation of a civil commitment proceeding.  See Project Release, 722 F. 2d at 976 ("Nor are we prepared to require that legal counsel be guaranteed at pre-hearing psychiatric interviews" in civil commitment process); Dower v. Boslow, 539 F. 2d 969, 971 (4th Cir. 1976) (due process does not require that state institution provide to persons being examined for pre-hearing report as to possible defective delinquency the right to counsel); Thornton v. Corcoran, 407 F. 2d 695, 701 (U.S. App., D.C., 1969) (counsel not required at psychiatric staff conference where mental examination requested when accused raises insanity issue); United States v. Albright, 388 F. 2d 719, 726 (4th Cir. 1968) (holding that "a defendant has no federal . . . constitutional right to have his attorney present during a psychiatric examination conducted at the instance of the prosecutor").  This Court will accordingly dismiss Plaintiff's federal claim asserting denial of the right to counsel for failure to state a claim upon which relief may be granted.

C.  Supplemental Jurisdiction

"Supplemental jurisdiction allows federal courts to hear and decide state-law claims along with federal-law claims when they are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy."  Wisconsin Dept. of Corrections v. Schacht, 524 U.S. 381, 387 (1998) (citation and internal quotation marks omitted).  Where a district court has original jurisdiction pursuant to 28 U.S.C. § 1331 over federal claims

and supplemental jurisdiction over state claims pursuant to 28 U.S.C. § 1367(a), the district court has discretion to decline to exercise supplemental jurisdiction if it has dismissed all claims over which it has original jurisdiction.  28 U.S.C. § 1367(c)(3); <u>Growth Horizons, Inc. v. Delaware County, Pennsylvania</u>, 983 F.2d 1277, 1284-1285 (3d Cir. 1993).  In exercising its discretion, "the district court should take into account generally accepted principles of 'judicial economy, convenience, and fairness to the litigants.'"  <u>Growth Horizons, Inc.</u>, 983 F.2d at 1284 (quoting <u>United Mine Workers v. Gibbs</u>, 383 U.S. 715, 726 (1966)).  Where the federal claims are dismissed at an early stage in the litigation, courts generally decline to exercise supplemental jurisdiction over state claims.  See <u>United Mine Workers v. Gibbs</u>, 383 U.S. at 726; <u>Growth Horizons, Inc.</u>, 983 F.2d at 1284-1285.  In this case, the Court is dismissing every claim over which it had original subject matter jurisdiction at an early stage in the litigation and declines to exercise supplemental jurisdiction over Plaintiff's state law claims pursuant to 28 U.S.C. § 1367(c)(3).

## IV.  CONCLUSION

The Court will grant Plaintiff's application to proceed <u>in forma pauperis</u>, dismiss the federal claims asserted in the Complaint, and decline to exercise supplemental jurisdiction.


  /s/ Faith S. Hochberg
**FAITH S. HOCHBERG, U.S.D.J.**


Dated:   September 6, 2007